MARY M. PERRINE, administratrix &c.,

*v.*

PETER VREELAND, executor &c.

A testator gave the interest on certain funds, which were to be securely invested on bond and mortgage, to his wife for life or widowhood, for the support of herself and their son, with a proviso that on her remarriage, her right to such interest should cease, and it should be payable for the support of the son only; and if she should remain unmarried until the son attained his majority, he should be entitled to one-half of the income for his own use; and that at her decease all the estate should go to the son absolutely, so soon as he should marry or become of age, but if he should die without heirs, or before he came into full possession, then over. The widow and two others were appointed executors. The testator died in 1840, and his widow, who, with one of the other appointees, proved the will, remarried in 1847. In 1848, the executors who proved the will filed their final account, and invested the fund as directed by the will, until its repayment to the executor in 1873, when it was invested in first mortgage on city lots, then worth three times as much as the fund invested. Afterwards, the mortgagor became insolvent, and the executor, on foreclosure, was obliged to buy in the property, in order to protect the fund. The son came of age in 1860. He was married to complainant in 1858, and died in 1864, leaving a child born of the complainant in 1860, who is still living.—*Held,*

(1) On construction of the will, that the son was entitled to the entire estate on the remarriage of the widow, and the gift over was defeated by the son's leaving lawful issue surviving at his death.—*Held,* also,

(2) That the executor's discretion as to the security of the investment in 1873 appearing to have been fairly exercised, and he having obtained advice from reputable counsel that the principal of the fund did not go to the son unless he survived his mother, he is guilty of no breach of trust, either because he continued to hold the fund after the gift over was defeated, or because of the investment in 1873, and that the land is the fund.

---

Bill for relief. On final hearing on pleadings and proofs.

Perrine *v.* Vreeland.

*Mr. S. B. Ransom,* for complainant.

*Mr. C. H. Hartshorne,* for defendant.

THE CHANCELLOR.

Cornelius W. Vreeland, now deceased, by his will, dated January 6th, 1840, after ordering payment of his debts and giving a specific legacy to his wife, directed that a certain lot of land which he then owned should be sold, and the proceeds used as thereinafter provided. He then proceeded as follows:

"It is my will that the money raised by the sale of the aforesaid lot be put out at interest, secured by bond and mortgage, and to remain so, together with all my money that I now have standing upon bond and mortgage, or that may be due me at my decease, until such time as hereinafter specified. It is my will that the interest or income of all my money or estate be paid to my beloved wife Caroline yearly and every year during her natural life, provided she remains my widow, for her to have and to use the same for her own support and the education and support of my son William. But in case she should marry, then it is my will that her right and title to said interest or income should cease with the date thereof; and in this case, my executors are to keep, hold and use the interest or income of all my estate for the sole benefit, education and support of my son William. And, further, it is my will that my beloved wife Caroline, in case her life should be spared, and she remain my widow until my son William should marry or become of age, that she should pay, or cause to be paid, to my son William the one-half of the income of all my estate, provided he should exact the same, for him to have and use the same as he may think proper.

"At the decease of my beloved wife Caroline, I give and bequeath to my son William all my estate, together with all the proceeds or profits, so soon as he shall marry or become of age, for him to have and to hold the same for himself, his heirs or assigns, forever. In case my son William should die without heirs, or before he comes into the full possession of my estate, then and in that case I give and bequeath to my surviving brothers and sisters all my estate, to be equally divided between them, share and share alike, for them to have and to hold the same for themselves, their heirs and assigns, forever."

He appointed his wife and his brother, Peter V. B. Vreeland, Peter Vreeland, the defendant, and Jasper Cadmus, jun., his executors. He died in February, 1840. The will was proved by Mrs. Vreeland and Peter V. B. Vreeland. In 1848 (the widow had then remarried), they filed their final account of the

estate, which was allowed and passed September 20th, 1848 ; by which they admitted that the amount of the net balance of the estate in their hands was $2,944.77. The testator's widow married Henry M. Burch, May 2d, 1847. Mr. Burch died August 27th, 1858, and she married her present husband, John Shilliday, November 2d, 1864. The testator's son William came of age in 1860. He was married to the complainant August 2d, 1858. He died May 24th, 1864. He had a child, a daughter, by the complainant, born March 14th, 1860, who is still living. His widow took out letters of administration on his estate on June 15th, 1864, and letters of guardianship of her daughter on July 18th, 1865. She married her present husband in 1866. She brings this suit to recover from the executor and executrix the estate given by the will to her husband, the testator's son William.

The estate appears to have been securely invested by Peter V. B. Vreeland previously to October 14th, 1873 ; and it having been paid to him, he then invested it on bond and mortgage of nineteen vacant building-lots, of the usual size of twenty-five feet front by one hundred feet in depth, in the city of Bayonne, in Hudson county. They were worth $500 apiece. The interest being in arrears, he began proceedings in this court for foreclosure of that mortgage and sale of the mortgaged premises, in 1876, and obtained a decree, March 14th, 1878, for $3,470.05, including costs. At the sheriff's sale, the property was bid up by another person against his bids to nearly $3,000, at which price it was struck off to him, as executor, and a deed from the sheriff was taken by him, accordingly, for it, under which he still holds it. The mortgagor is insolvent. The interest on the investment appears to have been collected and paid over, up to October 14th, 1875. The property is, as before stated, still in the hands of the executor, and it cannot now, for want of a market for it, be sold for enough to pay the principal and interest of the investment up to this time, besides taxes, but if turned into cash now, there would be a loss. The complainant insists that she is entitled to an account from the executors of the fund, with interest from October 14th, 1875, and that they are bound to pay it over to

her in cash. On the other hand, the executor Vreeland, who alone has had charge of the estate since the settlement of the final account, answers that he has been and is advised, and now insists, that the principal of the fund is not payable, by the terms and true construction of the will, until the death of the testator's widow; and, further, that if the complainant is now entitled to the principal, he is not bound to account in cash, but only for and in the property. He appears not only to have been careful in investing the fund, but also to have taken pains to ascertain when it was payable. He took the advice of two practicing lawyers of this state on the subject, obtaining a written opinion from one of them, at least, and was advised by both that the principal of the fund was not payable until the death of the testator's widow; and he acted upon the advice. It appears, also, that no demand was made upon him for the payment of the principal of the fund until just before this suit was brought.

By the will, the interest of the fund is given to the widow for life, provided she remains the testator's widow, for her own support and the support and education of the testator's son William; and it is expressly provided that on her remarriage, her right and title to the interest shall cease, and that thereafter the executors shall hold the estate for the sole benefit, education and support of William; and, further, that if the widow should live and remain unmarried till the majority or marriage of William, she should then pay him half of the income, for his own use absolutely, if he should demand it. The will then proceeds as follows:

"At the decease of my beloved wife Caroline, I give and bequeath to my son William all my estate, together with all its proceeds or profits, so soon as he shall marry or become of age; for him to have and to hold the same for himself, his heirs or assigns, forever. In case my son William should die without heirs, or before he comes into the full possession of my estate, then and in that case, I give and bequeath to my surviving brothers and sisters all my estate, to be equally divided between them &c."

The testator evidently intended to give the entire estate to William on the decease or remarriage of his widow. He expressly provides that on her remarriage, her interest in the

income (which was her entire interest in the estate) should cease, and the executors should therefore keep, hold and use the interest or income of all the estate for the sole benefit, education and support of William; and though the bequest of the estate to William is, by the language of the will, on the death of the widow, and not on her remarriage, he manifestly intended to give it to William on the happening of the latter event. He contemplated the possibility of the death of his widow before William should have attained to his majority or have been married, and therefore provided that so soon after her death as he should become of age or marry, he should have the whole estate absolutely. The gift over is, according to its terms, in the event of his dying without heirs (meaning children), or before he should come into the full possession of the estate. The testator's intention was that the estate should go over in case·William died without issue, and (substituting the word "and" for the word "or," to effectuate the testator's intention), before having come into, or become entitled to, the full possession of the estate. The widow's interest in the estate ceased on her marriage to Mr. Burch, in 1847; and thereafter, until William's majority, the executors were to hold the estate in trust for him for his sole use. He had a child born in 1860, in which year he attained his majority. He died in 1864. The child is still living. The fact that William left a child living at his death put an end to the limitation over; it could never take effect. From the date of his mother's remarriage, the executor was, by the will, to hold the estate for William's use, without limitation; and such gift of the use was equivalent to a gift of the entire estate. It appears by the context, too, that in fixing the time when the estate was to go to William, at the death of his widow, the testator was contemplating the contingency of her dying while his widow, and giving directions accordingly; and there is, therefore, nothing in that provision, when properly construed (as there is not when all the provisions are considered together), to prevent or militate against the vesting of the estate in William on his mother's remarriage. The estate, therefore, was vested absolutely in him at his death; and at his death it was payable to his legal represent-

ative. His administratrix was therefore entitled to it, as she still is.

It remains to consider the further question as to the account and payment. The executor has retained the estate in his hands until this time, under a misapprehension as to his duty under the will. He took pains to inform himself as to his duty, as before stated. He consulted not only one, but two, experienced lawyers, obtaining, as before mentioned, the written opinion of at least one of them on the subject. Their view of the subject, and his consequent action upon it, was acquiesced in by the administratrix. It is true she was without any information as to her rights in the matter, except such as she derived from his counsel and himself; but the information given to her by them was honestly and fairly given, and was the result of careful inquiry and examination. She herself might have got the advice of counsel, and she was at liberty to obtain an adjudication on the subject. The executor cannot be regarded as having been guilty of a breach of his trust in declining to pay over the fund to her, under the circumstances. His trust with regard to the fund still continued, and he was bound to take the same care of it as before the administratrix was entitled to demand it. Under the circumstances, his duty in regard to it was not changed, and his liability was not increased, by the fact that he held it and declined to pay it over to her after she became entitled to it. He managed it with care and made proper investments, and paid over the interest so long as interest was collectible on the investment. When, in 1873, he invested it on the lots in Bayonne, he appears to have been guilty of no negligence. Though the lots were vacant, yet they were in a growing city, and were worth at the time at least $500 apiece. There were nineteen of them, and they were then worth $9,500—more than three times the amount of the fund. The want of a market for the property is due to the great revulsion which has taken place since the investment was made. At sheriff's sale, under the foreclosure proceedings, the property was bid up to nearly $3,000 by another person, and the executor, for the protection of the fund, deemed it prudent to buy it in. His action in that matter does not appear to have

been such as to render him liable to the charge of breach of trust. He is bound to account for the fund, but is not bound to pay it over in cash. He may pay it over in the property itself. He will be ordered to pay it over in the property, which he will be required to convey to the complainant, as administratrix, on receiving payment from her of what may be due to him for costs and fees paid in the foreclosure proceedings and on the sheriff's sale, and taxes, if any, paid by him, and his commissions, and his costs of this suit. Or, the trust may be closed by the sale of the property under the direction of·this court, and the proceeds, after deducting the before-mentioned payments to the trustee, paid over to the complainant.